### SULLIVAN v. QUINN.

(Supreme Court, Appellate Division, Third Department. March 6, 1912.)

CONTRACTS (§ 252\*)—RESCISSION—AGREEMENT TO RESCIND—CONSTRUCTION.

Parties conveyed both real and personal property in consideration of a note and a mortgage on the real property for the full purchase price. Possession of part of the personal property was to be retained until a certain time, and before such time arrived the grantors died. An agreement was made and executed between their heirs and the grantee, under which the grantee deeded the real property to the heirs and received back his note and mortgage. *Held*, that such agreement was in substance a rescission of the contract, so far as it remained unexecuted, and surrendered title to all the personal property not yet delivered.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1145; Dec. Dig. § 252.\*]

Betts, J., dissenting.

Appeal from Judgment on Report of Referee.

Action by Robert E. Sullivan against George J. Quinn. From judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Howard R. Sturtevant, for appellant.

Arthur T. Johnson, for respondent.

JOHN M. KELLOGG, J. Judgment reversed, upon the ground that the agreement by which the property was deeded back was in substance a rescission of the contract, so far as it remained unexecuted, and carried with it a surrender of the title of the personal property, not already taken into possession. Referee discharged, and new trial granted, with costs to appellant to abide event. All concur, except

BETTS, J. (dissenting). On March 22, 1909, John Quinn and Kate Quinn, his wife, sold and conveyed to Robert E. Sullivan a farm in Jefferson county by a deed with the consideration therein expressed of $2,800. On the same day, and as a part of the same transaction, and for the same consideration, John Quinn executed to Robert E. Sullivan a bill of sale of certain personal property, consisting of nine cows, some dairy utensils, some wagons and farming implements, some wood, hay, straw, and coarse fodder, the latter

three to be raised on the farm sold the coming summer, and also a pantry cupboard. It was further agreed in this bill of sale, or "memorandum of agreement," as it was called, that Sullivan should have possession of the farm October 1, 1909, and "that second party is to have possession of above-mentioned tools at this date." On the same day Sullivan gave back to the two Quinns a bond for $2,800, and as collateral thereto a mortgage for $2,800 on the same real estate, being for the full amount of the purchase price of the real estate and the personal property. The bond provided that the first payment should be $200 cash October 1, 1909, and interest was to be at the rate of 5 per cent. and commence running on December 1, 1909. Sullivan at once took possession of the wagons and farming implements mentioned in the bill of sale or agreement. The farm, with the cows and dairy utensils thereon, was leased to one Willis Spaulding, which lease expired September 30, 1909, the day before plaintiff was to have possession of the cows and the farm.

With this situation existing, farm sold, mortgage given, wagons and farming implements changed possession, and cows and dairy utensils in possession of a tenant, who was to have possession of them until September 30, 1909, John Quinn died intestate April 11, 1909. Catharine Quinn, his wife, died June 4, 1909. The Quinns had lived on the real estate sold, and upon their death a son, the defendant, George J. Quinn, moved in the house where they formerly lived. John and Catharine Quinn left at least two sons, George J. and Thomas E. Quinn. Shortly after the death of Mrs. Catharine Quinn, George J. Quinn and his brother, Thomas E. Quinn, went to the plaintiff's residence, some six or seven miles from the Quinn residence, and asked the plaintiff if he intended to keep the farm as George Quinn testifies, and if he intended to take the place as Thomas E. Quinn testifies. They both testified in substance that Sullivan said he was willing to give up the whole business. Plaintiff testified:

"I think they asked me if I'd give up the farm for the bond and mortgage. I think they did, but don't know as they did."

All three testified that they did not come to any agreement on that day, and the two Quinns went away. After that Thomas Quinn telephoned to plaintiff, asking him if he would sell the place, deed them the farm, for the bond and mortgage. Sullivan says he told them he would give the deed of the farm for the bond and mortgage. Thomas Quinn says:

"I telephoned to him the next day after that; finally got him. *I asked him if he would give me the deed of the place.* He said he would. After that he came down to Gouverneur and the deed was drawn."

On June 9, 1909, plaintiff and his wife gave to Thomas E. Quinn a deed for these same premises that Sullivan had purchased of John Quinn and wife. There is no reference whatever in this deed to cows, or any personal property, nor was any bill of sale given between the parties. On the same day—that is, June 9th—an option was given in writing by said Thomas E. Quinn to plaintiff, giving plaintiff the option of purchasing said farm for $2,800 at any time

before October 1, 1909. The option contained no reference whatever to cows or any personal property. This option contains the following clause, after referring to the number of acres of land:

"And being the same premises conveyed me by said Sullivan, of even date herewith, for the sum of $2,800."

The acknowledgment to this option is taken before Howard R. Sturtevant, notary public, the attorney for the appellant herein; so it would seem that the Quinns had the benefit of a lawyer on that occasion, whether Sullivan did or not. This deed and option were given June 9, 1909. No personal property was returned, then or later, by Sullivan to the Quinns. No application was made then by the Quinns to Sullivan to return any of the personal property, nor was there any reference whatever, in the papers executed on June 9th, to the personal property at the time the deed was given from Sullivan to Thomas E. Quinn. Quinn surrendered to Sullivan the bond and mortgage previously given by Sullivan to the Quinns, which had not been recorded, and that was the consideration between the parties for this conveyance; Thomas E. Quinn having possession of the bond and mortgage, and assuming to and in fact turning them over to Sullivan. Upon the 11th day of June, George J. Quinn was appointed the administrator of the estate of his father, John Quinn, by the surrogate of Jefferson county.

Thus matters stood between the parties until the last of September, when Sullivan went to the tenant, who had possession of those nine cows, about the 28th, and took possession of them, agreeing to pay the tenant what would equal the value of the milk for the two days that the tenant was to have the use of the cows. He drove the cows away and placed them in pasture. On September 30th, at night, George J. Quinn went to this pasture after dark, and drove away the cows, taking them to what had been his father's place, where he was then living. Upon Sullivan demanding the return or possession of the cows, and the defendant refusing to return them or let the plaintiff have them, this action for conversion was brought for the "nine cows, one milk can, rack, and milk pans, about twenty cords of stovewood, about seven tons of hay, about eight tons of oat straw, and the cupboard in the pantry"; damages being alleged at $447. The answer was a general denial. The additional articles of personal property mentioned therein were articles that were included in the lease by John Quinn to Willis Spaulding. The referee has found in favor of the plaintiff as to all the property, except as to the hay and straw, and fixed the value of such articles converted at $220, and that the plaintiff was not entitled to such hay and straw. From the judgment entered upon his report, the defendant appeals.

I can see no merit in the appeal. The referee upon sufficient evidence has found in favor of the plaintiff for all of the articles, except the hay and straw. The wagons and farm implements were not demanded by defendant from plaintiff until the time plaintiff brought this action. Title to them is not alleged in the answer, and it is very evident, from the entire course and dealings between the parties, that they had acquiesced in the situation of buying back the father's real

estate and permitting the plaintiff to have the personal property. At practically the earliest possible moment the plaintiff could get the cows and milk pans, etc., used with the cows, he went for them and got them. To reverse this judgment would be to make a contract between these parties which they did not make themselves.

It follows that the judgment should be affirmed, with costs.